TIPTON AND KALMBACH, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tipton & Kalmbach, Inc. v. Commissioner
Docket No. 21088-81R.
United States Tax Court
T.C. Memo 1982-260; 1982 Tax Ct. Memo LEXIS 485; 43 T.C.M. (CCH) 1345; 3 Employee Benefits Cas. (BNA) 1670; T.C.M. (RIA) 82260; May 11, 1982. James H. Turner and Stephen A. Weinstein, for the petitioner. Samuel E. Berger, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: This matter is before the Court on respondent's motion to dismiss for lack of jurisdiction on the ground that petitioner has failed to exhaust its administrative remedies as required by section 7476(b)(3) [1] and Rule 210(c)(4). [2] Respondent filed a memorandum in support of his motion and petitioner filed two memoranda in opposition thereto. The motion was heard at the Denver Trial Session on March 29, 1982. *486 The pertinent jurisdictional facts may be summarized as follows: 1. On October 25, 1977, petitioner filed an Application for Determination Upon Termination (Form 5310) of its profit sharing retirement plan because of adverse business conditions. This application was later withdrawn and resubmitted in September 1978. The only major issue was whether reductions in work force by petitioner constituted partial terminations. 2. On July 18, 1979, respondent made a proposed adverse determination. 3. Since petitioner had decided in 1979 to continue the plan and have its qualification recognized because business conditions had improved, petitioner filed on July 25, 1979, an Application for Determination for Defined Contribution Plan (Form 5301) and appealed the prior proposed adverse determination by letter dated August 13, 1979. The letter advised that the reductions in work force should not constitute partial terminations and a conference was requested. Thus, a termination request and a qualification request were pending with the Internal Revenue Service at the same time. The Service treated the new qualification request as automatically withdrawing the termination request. *487 In other words, the two requests were regarded as mutually exclusive. The termination request files were closed by the Service and the only pending issue was the continuing qualification of the plan. 4. Between November 1979 and November 1980 there was frequent correspondence between petitioner and respondent and several communications. During the spring of 1980 the Service began a new program ENCEP (ERISA Noncompliance Enforcement Program). [3] This program resulted in shifting petitioner's application between Denver and the key district office in Dallas. After receiving no action from respondent for about six months, the petitioner's counsel in late spring or early summer of 1981 informed respondent that *488 petitioner was giving consideration to filing an action for declaratory judgment. 5. Finally, almost 24 months after the qualification request was filed, the Denver District Director sent the petitioner a proposed adverse determination letter dated July 16, 1981, that the plan did not meet the requirements of section 401. The explanation given in the attachment to the letter is identical to that stated in the attachment to the prior proposed adverse determination letter dated July 18, 1979. 6. Without filing an appeal to the Regional Office within 30 days, [4] as required by respondent's procedural rules, [5] petitioner filed a petition for declaratory judgment with this Court on August 11, 1981, asking that it declare that the Tipton and Kalmbach Profit Sharing Retirement Plan has been, and continues to be, a plan qualified under section 401. The narrow question *489 presented for our decision is whether in these particular circumstances the petitioner exhausted its administrative remedies before filing its petition in this case. Respondent contends that petitioner has failed to exhaust its available administrative remedies by not appealing the July 16, 1981, proposed adverse determination letter to the Office of Regional Director of Appeals (Appeals Office), and therefore this Court lacks jurisdiction under section 7476(b)(3) which provides in part: (3) Exhaustion of administrative remedies.--The Tax Court shall not issue a declaratory judgment or decree under this section in any proceeding unless it determines that the petitioner has exhausted administrative remedies available to him within the Internal Revenue Service. A petitioner shall not be deemed to have exhausted his administrative remedies with respect to a failure by the Secretary to make a determination with respect to initial qualification or continuing qualification of a retirement plan before the expiration of 270 days after the request for such determination was made. Respondent also argues that his procedural rules [section 601.201(o)(6) and (o)(10)] require petitioner *490 to appeal a proposed adverse determination in order to exhaust administrative remedies and failure to do so precludes declaratory judgment relief. To the contrary petitioner contends that on these facts it has exhausted its administrative remedies because respondent "has prtracted the administrative proceedings unduly," , and that progress with respect to its qualification request has been "severely hampered due to causes beyond its control." . We agree with petitioner. In view of the unusual facts and circumstances present in this case, we think the petitioner's progress has certainly been delayed and hampered. Almost 24 months had passed from petitioner's qualification request before it filed its action for a declaratory judgment. During that two-year period respondent was unable to expedite matters and finally resolve the qualification issues. This Court has previously held that inordinately long delays of 21 months and 2 years, respectively, can result in an exhaustion of administrative remedies. See , *491 affd. per order (3d Cir., July 29, 1981, and . While we have recognized that the prcedural rules are entitled to judicial deference, we have explicitly stated that a petitioner need not "in all cases complete all steps in the published administrative process prior to petitioning this Court for declaratory judgment relief." . We have said that our task with respect to a jurisdictional issue of this type is to determine "whether, on all the facts and circumstances presented, petitioner may be deemed to have exhausted its administrative remedies due to respondent's purported failure to process its request expeditiously." . In our opinion this petitioner has done all that it is required to do to seek a determination with respect to its plan's qualification. It waited two years without receiving a determination and it now seeks judicial assistance to resolve any questions relating to its plan's qualification. Even if we assume, arguendo, that an appeal of a proposed adverse determination is a mandatory *492 prerequisite to declaratory relief in all cases, we think the petitioner has complied with the requirements in view of what happened in the administrative processing of this matter. We note that the proposed adverse determination letter of July 16, 1981, is almost identical to the proposed adverse determination letter of July 18, 1979, and the explanations given are exactly the same. Petitioner filed an appeal to the July 18, 1979 letter on August 13, 1979, more than two years prior to its petition for declaratory relief. It strikes us that respondent is seeking to return petitioner to square one by again issuing a proposed adverse determination letter which is almost word for word the same as the letter dated July 18, 1979, and has attempted to buy time by turning back the administrative clock through the reissuance of an identical proposed adverse determination letter. Accordingly, we will deny respondent's motion to dismiss this case for lack of jurisdiction. An appropriate order will be entered.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. All rule references are to the Tax Court Rules of Practice and Procedure.↩
3. The objectives of ENCEP were (1) to protect innocent participants from the adverse tax consequences of a plan's disqualification and (2) to impose sanctions only on those who benefited from the plan's non-compliance with ERISA. The idea behind ENCEP was that every plan in field offices would be processed through the ENCEP program to see if any violations of ERISA could be corrected without the necessity of disqualifying the entire profit sharing or pension plan.↩
4. The Service's procedural rules now require a single level appeal process for most proposed adverse determination letters. This system provides for review by a conferee who is separate and independent of the employee plan specialist. ↩
5. See section 601.201(o)(6) and (o)(10), Statement of Procedural Rules.↩